UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**WENDY LOU BLAIR**
    Plaintiff

**v.**                                                                                                      **No. 1:09CV-00062-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Alvin Wax. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 13 and 14, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on September 24, 2008, by administrative law judge (ALJ) Ronald Kayser. In support of his decision denying Title II benefits, Judge Kayser entered the following numbered findings:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2005, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since her alleged onset date of disability (20 CFR 404.1520(b) and 404.1571 et seq.).

3. The claimant has had the following severe impairments: obesity, insulin dependent diabetes mellitus, lupus/fibromyalgia and a history of repeat surgery for repair of an abdominal hernia.

  4. The claimant has not had an impairment or combination of impairments that have met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

  5. After careful consideration of the entire record, the undersigned finds that the claimant has had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that she has been limited to standing and walking 1 hour without interruption; standing 5 hours out of an 8-hour work day; walking 5 hours out of an 8-hour work day; frequently reaching, handling, fingering, feeling, pushing and pulling bilaterally; occasionally climbing, balancing, stooping, crouching, kneeling and crawling; could frequently work around unprotected heights and dangerous machinery; could frequently operate a motor vehicle; and could occasionally be exposed to humidity, wetness, temperature extremes and vibration.

  6. The claimant has been capable of performing past relevant work as a mystery shopper and hospital ward clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

  7. The claimant has not been under a disability, as defined in the Social Security Act, through the date of this decision (20 CFR 404.1520(f)).

(Administrative Record (AR), pp. 24-28).

**Governing Legal Standards**

  1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*,

861 F.2d 475, 480 n. 1 (6ᵗʰ Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6ᵗʰ Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6ᵗʰ Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6ᵗʰ Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on

the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Discussion**

The plaintiff is a younger individual, born on September 10, 1967 (AR, p. 75). She is obese and suffers from diabetes and fibromyalgia. This case was denied at the fourth step of the sequential evaluation process. At the administrative hearing, the vocational expert (VE) testified that an individual with the limitations stated in Finding No. 5 would retain the ability to perform the plaintiff's past relevant work.

The plaintiff's first contention is that Finding No. 3 is flawed because it fails to include her hypertension among her "severe" impairments. A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. § 404.1521. In addition, to be disabling, a "severe" impairment must satisfy the so-called duration requirement, to-wit, it must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The magistrate judge concludes that the plaintiff has failed to provide any probative medical or other evidence establishing that her hypertension significantly limits her ability to do basic work activities for twelve continuous months. Furthermore, assuming for the sake of argument that the ALJ erred by not including the plaintiff's hypertension as a severe impairment at the second step of the sequential evaluation process, the error was harmless if the ALJ found at least one severe impairment and continued the sequential analysis and ultimately addressed all of her impairments in determining her residual functional capacity (RFC). See *Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir., 1987). The plaintiff has not shown that her hypertension results in a limitation in excess of those stated in Finding No. 5. Therefore, any error was harmless.

The plaintiff admits that "[i]n and of itself, this error [of not listing hypertension as a severe impairment] would be harmless but for the fact that it illustrates the failure of the ALJ to consider the record as a whole" (Docket Entry No. 13, p. 1). She further argues that "[n]ot only did the ALJ fail to properly evaluate the hypertension impairment, but also he failed to consider the functional impact of the symptomatology including headaches, dizziness, nosebleeds and sweating when he determined Blair's residual functional capacity" (p. 3). The burden of proof at step 2 of the evaluation process is upon the claimant. The magistrate judge concludes that the plaintiff has failed to show that the combined effect of all her impairments, whether severe or non-severe, results in limitations in excess of those found by the ALJ in Finding No. 5. The plaintiff's allegations about the ALJ's "failure to consider" various factors are conclusory and unpersuasive. The plaintiff cannot "know" what the ALJ considered and did not consider in reaching his decision. An ALJ is not required to specifically discuss every piece of evidence and every conceivably relevant factor in his written decision.

Next, the plaintiff objects to the ALJ's commentary that the "evidence shows that she is doing nothing to address her weight problem" and that "she admitted that she has not been diet compliant in eating 3 meals a day, and that her attempts at maintaining a 1400 calorie diet were not good" (AR, p. 26). Obesity may exacerbate other impairments. However, the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments." Social Security Ruling (SSR) 02-01p. The magistrate judge concludes that, regardless of the accuracy or fairness of the ALJ's assertions about her obesity, the plaintiff has failed to marshal competent medical evidence showing specifically how her obesity, in combination with her other impairments, limits her to a degree inconsistent with the ALJ's RFC Finding No. 5. Therefore, there was no reversible error.

Next, the plaintiff objects to the ALJ's rejection of the opinions of her treating physician, John Kilgallin. The ALJ found as follows (AR, p. 28):

> In December 2005, nurse Sharon Benson completed a fibromyalgia questionnaire/residual functional capacity statement in which she checked almost every block on the form, and that the claimant was practically bedridden [AR, pp. 292-295]. However, this statement is not entitled to any weight since it is not supported by the objective medical evidence. ... The claimant's attorney attempted to but strengthen his argument in March 2006, by having John Kilgallin, M.D., initial an identical form which Ms. Benson again completed [AR, pp. 308-311]. Again, however, this form is not supported by the medical evidence, and is found to be merely an attempt by the doctor to help his patient obtain benefits.

In or around April of 2008, the plaintiff apparently completed the same form herself, noting that "medicine puts me to sleep," and Dr. Kilgallin initialed it (AR, pp. 443 and 446). In March of 2008, Dr. Kilgallin wrote a letter in support of the plaintiff's claim for disability due to the combined effects of obesity, fibromyalgia, diabetes, and hypertension (AR, pp. 448-449).

In her fact and law summary, the plaintiff mounts a three-pronged attack against the ALJ's refusal to accept Dr. Kilgallin's completion of the fibromyalgia questionnaire or his opinions of disability. First, she argues that Dr. Kilgallin's opinion was entitled to controlling weight. A treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2). As indicated above, the ALJ found that Dr. Kilgallin's opinion "is not entitled to any weight" due to a lack of supporting objective medical data (AR, p. 28). The plaintiff argues that it was unfair for the ALJ to rely upon a lack of objective findings in support of limitations due to fibromyalgia because "fibromyalgia is a rule-out disorder" and "objective testing is of little value in determining the severity of fibromyalgia" (Docket Entry No. 13, p. 7).

7

The magistrate judge concludes that, to the extent the opinions in question were those of Nurse Benson and not Dr. Kilgallin, a nurse is not considered to be an "acceptable medical source." 20 C.F.R. § 404.1513(a). To the extent Dr. Kilgallin's opinion was 1) a raw opinion that the plaintiff is "disabled" or "unable to work," or 2) an RFC or other finding that would direct the determination or decision of disability, it was not a true "medical" opinion at all, but rather a medical opinion on an issue reserved to the Commissioner, which is entitled to no special significance. See 20 C.F.R. § 404.1527(e). The plaintiff is correct that, by its nature, fibromyalgia results in pain and other subjective symptoms that cannot be established objectively. However, in such cases, the Commissioner is not required simply to accept the plaintiff's self-description of the limitations caused by her impairment. Rather, in cases such as the present one in which the objective medical evidence does not confirm the severity of the alleged pain, the Commissioner will consider the following factors:

    (i) Your daily activities;

    (ii) The location, duration, frequency, and intensity of your pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir., 1997).

The second prong of the plaintiff's attack is that, even if Dr. Kilgallin's opinion was not entitled to controlling weight, "[a] finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p. If the ALJ declines to give a treating source's medical opinion controlling weight, in determining what weight to give the opinion, he should consider the following factors:

1. Length of the treatment relationship and the frequency of examination.

2. Nature and extent of the treatment relationship.

3. Supportability.

4. Consistency.

5. Specialization.

20 C.F.R. § 404.1527(d)(2) - (5). The magistrate judge concludes that the plaintiff has failed to show that a proper consideration of these factors based upon objective medical evidence and credible testimony in the administrative record would support Dr. Kilgallin's disabling opinions.

Finally, the plaintiff argues that the ALJ's decision is flawed because it fails to identify "good reasons" for the weight given to the treating source medical opinion as contemplated by 20 C.F.R. § 404.1527(d)(2) and *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir., 2004). The undersigned concludes that, in this case, the ALJ did identify "good reasons." Supra at p. 7.

**RECOMMENDATION**

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).